*58 OPINION of the Court, by
Ch. J. EdwArds.-⅛
The appellees exhibited their bill in chancery to recover the legal title to land, the equitable title to which they alleged was vested in them by the following entry: “ 12th December, 1782 — Benjamin Johnson enters 10,000 acres, o» ten treasury warrants, &c. lying between Hickman and Jessamine creeks, beginning where Douglass’s lower line crosses Hickman, thence with said line to Jessamine, thence to extend down Jessamine and Hickman, so far as shall be sufficient to include the quantity, so as to exclude the following entries, &c. amounting in all to nine.”
As this court does not perceive that the circuit court has given to the entries of the appellants, or those under which they claim, any exposition, to their injury, which is not justified by the land law, the only question thas *59 claims the attention of this court, is upon the validity of the before recited entry; for however defective and erroneous the claims of the appellants may have been in their origin, since they have been carried into grant, they cannot be impugned by the appellees, unless they shew avalid entry.* In deciding whether their’s is so, the calls for Hickman’s creek, Douglass’s lower line, crossing Hickman, See. and Jessamine creek, merit attention. Hickman and Jessamine creeks are fully proven to have been notorious, by those names, at, before and after the date of the entry ; and that they were so, has not been contested in argument. But great objections have been made to the call for Douglass’s line. It has been contended, that this call is too indefinite, in not expressing whether it was a line run by him for others, or for experiment, or a private survey, or the line of some claim to which he had a legal right. These objections would certainly be entitled to great weight, and most probably would be conclusive against the entry, if the testimony in this cause did not elucidate this ambiguitywhich it seems very clearly to do. It is in proof, that Douglass made a number of military surveys ; and that the lines run by him, were generally known by the appellation of Douglass’s lines, on account of their being run by him ; and this may very reasonably he accounted for. The act of making the surveys, would be the act that would most naturally attract attentionand as it would be presumed that the surveys were designated to appropriate land, tt would, with a locator, be a much greater object to know where they ran, in order to avoid them, than to know whose particular claims they actually did appropriate. And it would be a much less embarrassing, and more intelligible description, to designate them as Douglass’s lines generally, than as the lines of the particular persons to, whom the land belonged ; and indeed, the difficulty of knowing for whom each particular survey had been made, would seem to shew the necessity of this distinguishing appellation : but whether the appellation was. wise or foolish, is wholly immaterial, If it had obtained general use, all the purposes of a more reasonable one would be answered ; it would serve to point out the object to which it was applied, and distin- *60 gui&h it from all others. That Douglass made a ce»« nection of surveys., the lines of which crossed Hickman and Jessamine, is well proved; and the testimony in this case, according to the reasoning in the case of Manson and Evans's heirs, conclusively establishes the notoriety of the lower line of Douglass, which crossed Hickman, and run thence to Jessamine. Its crossing was at the place on Hickman designated in the plat by the letter A, the beginning of the entry in question. Not a solitary-witness proves that the line of a single survey made by-Douglass crossed lower down : the beginning therefore must be taken as well established. From the beginning, the entry is to run with Douglass’s line to Jessamine. Against this part of the entry, it has been contended, that no course being given, and there not being any record referred to, either expressly or by implication, that could throw any light on the subject, a subsequent locator would not know how to follow it; but there is ⅝ line proven, forming the lower boundary of a connection of surveys, extending from Hickman, at the place designated by the letter A, to Jessamine creek ; and this line being shewn, it was incumbent on the appellants to have shewn (if such was the fact) that, with reasonable exertions, a susequent locator could not have pursued it j no such proof has been exhibited, but the contrary seems to be the just conclusion from the testimony. Pursuing this line, it is found to cross the east fork of Jessamine, before it reaches what is contended to be Jessamine itself. There is some testimony in the cause that those two streams were distinguished by the appellations, the one of the East Fork, the other the West Fork, of Jessamine : and it was contended that the base line of this entry should not be extended further than the East Fork, it being as large, or larger than the other. A great preponderance of testimony establishes that the spring, from which the West Fork flowed, was called Jessamine ; that the stream, from the aforesaid spring to its mouth, was called Jessamine creek, and the other was called the East Fork of Jessamine. There is no testimony that the East Fork itself was ever called Jessamine ; so that even had the other been called the West Fork, as well as Jessamine, either name would shew that it was meant, in exclusion of the East Fork ; and it does not appear that this circumstance would vi» *61 tiate the call, as the stream itself was notorious by those pames, if the witnesses are to be credited : but there is po douht that the appellation of Jessamine had been notoriously and exclusively applied to the West Fork ; and however arbitrarily it may have been so applied, or whatever may have been the relative magnitude of those streams, this court cannot, in the construction of an entry, consider the appellation as belonging to the other stream, because nature seems to point it out as the main stream, and reason would appropriate to it the characteristic appellation of the main stream. Therefore, the East Fork never having been known by the name of Jessamine, and the West Fork having been notoriously so called, no doubt can exist that the entry should be extended to the West Fork. It has however been contended, that the base line thus established, could not be the one contemplated by the locator, on two grounds : the first is, that his own declarations justify this inference. Whatever those declarations may have been, they are extrinsic, and cannot affect the entry, either to render it better or worse than it otherwise would be. The next ground is, that the entries called to be excluded, or some of them, liq out of the bounds of the 10,000 acres, as surveyed, or directed to be surveyed. This would only tend to shew that the locator, either through mistake, or from some other motive, had described for his entry a larger exterior bqundary than it could occupy, which has never been deemed, of itself, fatal by this court; and were there no precedents, deriving great authority from being uniformly and frequently reiterated to this effect, still this court would think any other construction than that which has been adopted in the case of Mosby and Craig vs. Cogar, too rigid.
To run with Douglafs’s line from Hickman to JeJJaminet a good defeription, although, no courl'e is given in the entry, not no record referred to* by which the courie could be afeertained.
The reputation of Dou-glafs’s line being proved, and alfo a marked line from Hick, man to Jeffa-mine, foiming the lower boundaries of Dou-glafs's furveys, theJ court will prefume the line could be traced byreafon. able diligence, until the contrary is proved* The call from H.to Jeffamine, with Douglafs’a line, ihall not ftop at the eaifc fork, although it is the largeft, and nature has made it the ?nam ftream, And reafon •would attach She appellation to it 5 reputation and general confent having applied the name to an inferior branch.
Same rinci-¾>1 Clure vs £ynet ante 56-— Whitaker versus Hall, pofl
The exTinfic information of a part) as to the locality of his entry, cannot make it better or worfe. — Con~ Jilla vs Brij'coe, Hug. 45— Clure vs. Win-lockf May 1809 —- Craig vs Pel-ham> Pr. Bee. ⅞86.
An entry calling to exclude other entries, is not vitiated thereby.
Same principle, and manner of executing furvey in JHofhy & Craig versus Cogar-~~ Drake vs* Ram-jcy and Logan, Hat 34.
Whether a withdrawing of the warrant from the office, ' would be a withdrawal of the entry ?
*61 The withdrawal of the warrants does not seem to be sufficiently established to produce any effect upon this entry. Legal presumptions are against the fact alleged ; and were the fact proved, we are by no means prepared to admit the conclusion that was contended for, viz: that it would amount to a withdrawal of the entry.
Recree affirmed.

 Note, — The entry under which the complainants claimed, was prior in d^te to the emanation of thefgrant»