OPINION of the Court, by
Judge Logan.
This is a suit for land under conflicting titles. Blaine was the complainant in the court below, and must shew a good claim in himself to justify a recovery. He claims under an entry made on the 15th of May 1780, of 400 acres, calling to lie “ on the north side of the middle fork of Licking, to adjoin Alexander Pollock on the north, and run north and east for quantity.”
This leads us in the first place to examine the claim of Alexander Pollock. Pollock had at that time obtained a certificate for a settlement and pre-emption, and entered his settlement to “ lie on the north side of the middle fork of Licking, adjoining the land of John Miller, including his improvement.”
As Pollock calls to adjoin Miller, we are next led to an examination of Miller’s claim. He had previously obtained a certificate of settlement and pre-emption, in which his settlement is located “ on the north side of the middle fork of Licking creek, to include his improvement, adjoining the land of Alexander Pollock.”
The complainant’s entry depends on the establishment of these claims. . Whether their entries contain the requisite precision of good entries, and as such impart a similar precision, to that of the complainant, is the subject of investigation.
Both Pollock’s and Miller’s improvements are well identified, and proved to’have been made in the year 1775, consisting of a cahin and cleared land. Besides, *143 several witnesses prove that those improvements were respectively called and generally known as Pollock’s and Miller’s ever since the year 1775 6; and there is no evidence contradicting this fact. Again, the notoriety of the improvements is particularly charged in the bill, and undenied by the answer, although the defendant possessed personal knowledge of the fact.
The fail of notoriety of an improvement being ptfitively charged in the bill and not de* nied by the an. fwer, although the defendant had a ferjen* al knowledge of the improvement; is evi. dence of the notoriety.
Circuirían, ces enumerated tending teprove the notoriety of improvement.
The genera, lity and uncer. taiuty of the call for the middle ferk of Liekirg corree, ted by the call for notorious improvements,. Accord - M*Gee vs. Tbempfcrt) VOl. I; 13a,
Entry to ad¿ join a fettlement and pre. emption before the pre-emption was entered v'1 or ^al/ad! join the fettle, ment only — CnjC;0r<tsV°iwá’ eiir,.12, it— Ward and Ken. ‘Zlwuli'm v! 7aylor, 4t— Suearingm v¡. &mub, 94 Harrod, Hard, 441 — Kenny vs TíÍ — g’ms*' ws. Rice, voi.s, io% — Speed vs. Severe, ijz.
*143 Pollock, Miller, and Thompson the defendant, pom-posed part of a company of fourteen men who Were engaged, in 1775, in makirg improvements in the same quarter of the country. There was also another company of fifteen men employed at the same time in improving below the others on the same creek, between which companies there was seme intercourse. Many of those belonging to said companies obtained claims to land in that neighborhood, and two of them erected stations within 7 or 8 miles of the improvements liow in question ; and moreover one of those two laid in the present claims before the court of commissioners*
From these circumstances the inference fairly deducible fortifies the evidence of notoriety in both Pollock’s and Miller’s improvements. It might be added that Pollock’s improvement was situated on a buffaloe path leading from the lower Blue Lick, and was therefore the more likely to have attracted notice and induced the inquiry to whom, it belonged.
With regard to the call for the middle fork of Licking, it can afford but little aid in designating those improvements. But this call was at least equal to a call for the waters of Licking, a water course well known, and which served to point out that Section of the country where those improvements were. This call, then, united with that for the respective improvements, it is conceived would have enabled a subsequent inquirer to have found them upon ordinary and reasonable diligence.
Here it will be proper td observe that the pre-emp-tions of neither Pollock nor Miller were entered at the time the complainant made his entry. So that under the authority of the most recent and best settled adjudications of this country, the settlement entries, only, are to be regarded in the construction of his entry. For the pre-emptions being unlocated, appropriated ns land, and •f course presented no precise boundary to adjoin. In *144 short, tire'certificares gave but the right to elect there-aRer whatl^nd to take adjoining the settlements. Hence it follows that the settlement rights constituted the only kinds of Pr llocíc and^Milter when the complainant made hiS entry, and that calling to adjoin- the land of either must be understood and held to adjoin the stt-dement.
Location oí one fettler call. nother^beiLre that other had obtair.pd his cer nie^nc^ri^h^tAh call cannot be applied,to the titoTcb ained but íhait be dif. regarded ¿s a entity^ ™'
As, therefore, the complainant’s entry depends on Polio: k’s settlement, and Pollock calls for Miller, we first examine Miller’s claim.
Miller, as has already been observed, first obtained his certificate calling to adjoin Pollock’sland ; but at that tjme Pollock had no land located. Whether be could procure a certificate at all, and if he should, in what manner he might choose to locate his claim, depended ün subseqnent acts to be performed. ' The ££⅜ therefore, to adjoin his land, although it might be understood as leading to the neighborhood of ¡1IS impro\ement, in as much as that was notorious as neven[ieless it communicated to the locating claim no given form or precise boundary. Whether, therefore, the location in Miller’s certificate can be sustained indfrpendent of the call to .adjoin Pollock, and whether ,this call may be disregarded without prejudice to the location, are questions necessary to be determined.
The affirmative of these propositions, it is believed, is justly maintainable. It is already decided that Mil-jer’s improvement possessed the rtquired'notoriety to’ sustain an entry, without the aid of Pollock’s location ; and it is conceived that an unnecessary call in a loca-{;oni Ii0t calculated to deceive or mislead a snbstquent locator, may with propriety be disregarded; or a call for an object evidently not existing, or which on the propep inquiry would unavoidably have -been found without tfleet and not deceptive. Now the call for the land of Pollock would necessarily have induct d.the usu-aj examination on record for Pollock’s claim, and if found not to exist, it would not have deceived or misled with regard to the position of Miller's settlement.
Miller’s location with the court of commissioners (and not his entry with the surveyor) having been then made, and Pollock not having then obtained his certificate, Miller’s must be considered stripped of the call to adjoin Pollock, and as calling “ to lie on the north *145 side of the middle fork of Licking creek; to.include his ioiprove,tnt/!i.”
Entry., “ on thf ™'tbfideoi his’im-pr^mern”— n*ot 'extend'*»! crofs the creek —iul,eJ direc* ted’-
Vide ClMm-beard vs Kenny, P’ ^7’
. .^"^7 ^e‘ a„n improvement,how t0 furveiiei j^ec Moórevs. Harris, %6~— ^“¡jerdvirfus ¿ÉÍríj* Morganvs Re. 2j9-“ 129,
■0⅛°£-*^¾⅛ rjy
It remains now to determine upon the manner of surveying this claim, in order thatlre may be enabled to ascertain the position oí Pollock’s settlement depending thereon. Mdler’s location with the commissioners cannot, pursuant to its own calls, be surveyed in a square to the cardinal points, With the improvt ment in. the cen-tre ; because this mode of surveying will cross the W he re as the location confines the claim to the north side of the creek. And regarding this call in the entry as controling in some measure the figure of the land, we think the survey should be made binding on the north side of the creek so far that lines running from the upper and lower termination óf this base, at right angles to its general course, will include the improvement equidistant from them, and 400 acres as nearly in a square as the situation of the creek will permit* . .
It remains next to determine upon the manner of sur- ■ veying Pollock’s settlement. His entry contains calls similar to those ita Miller’s ; but it contains the call also to adjoin the land of Miller : and owing to the distance of.Pollock’s improvement .from the creek, the reason which operated in giving position to Miller’s claim, does not apply to the same call in Pollock’s. But the call to adjoin the land oí Miller, will in some degree regu-íate the location and position of his settlement. Miller’s land and Pollock’s improvement constitute the locative calls of Pollock’s settlement: to adjoin the one and include the other is the direction given.
Miller’s settlement, as directed to be laid down, will present a northeastern boundary towards Pollock’s improvement. .From this boundary we are of opinion that lines at right angles should be extended including Pollock’s improvement designated in the plat in the centre between them, and 400 acres as nearly in a square as the distance from Miller’s northeastern boundary to saia improvement will permit; ana, il necessary, the base of Pollock’s survey on-said line of Miller should be extended in the same course thereof until parallel lines as aforesaid, running at right angles therefrom, will give the quantity.
Blaine’s entry should then be surveyed to adjoin Pollock on the north side, running equal distances frdm *146 the middle of Pollock’s northern boundary, as directed to be surveyed, for the base of 400 acres in a square, and running from the westwardly termination of this base a due north course, so far that a line of equal length running east from its northern termination, and thence south to Pollock’s land, as directed to be laid down, will include 400 acres.
and E forqiun. t¡t>, ¡n a Iquare the middle of . P’s line to be the middle of tbe 400 acres — Accord. Mar-Jháll vs Dupujy ante? 134*
So far as the entry or' a preemption or marking & improving varies from rhe iocation in the certificate,the dig-amy of the preemption is loft • — Accord, ante. Fryer vs. holder'sbeirs, > 37 — Robinjon vs Corn To) 2, 127 — L-ockbeari ver jus *X'abue, 150 — Clmkinbeard^ vs. Kenny, 512— M'Gee vet jus í'bomjján, v»i. *35 lard's heirs vs. 'Jtayhr, Pt.Dee. 348.
As the complainant’s claim, when thus surveyed, will still interfere with the defendant’s, we must in the next place proceed to investigate his. -He claims the land in contest under a certificate from the court of commissioners for a pre-emption of iOOO acres ; the location of which with the commissioners depends essentially on the call to include his improvement. The other calls in the certificate are only descriptive of the neighborhood.' But without inquiring into their effect, it is sufficient to observe that the evidence of notoriety, &c. in relation to Miller’s and Pollock’s seems equally to apply to the improvement of Thompson : and it need scarcely be mentioned, that this, as the only locative call, would place the claim in a square around the improvement in the centre, runrún- to the cardinal points'.
We should here have closed the investigation of these claims, but for the entry with the surveyor of Thompson’s pre emotion, containing other locative calls departing in,some measure from the ground his claim at’ first occupied. This entry was made in 1782, and being subsequent.to the entry of Blaine, so far therefore as it has varied from its first ground, must lose its pre-, emptive dignity, and yield to the priority of Blaine’s.
Thompson’s entry with the surveyor calls to lie “ on the waters of the north of the south branch of Licking waters of the Hiukstonls fork, adjoining William Steele’s pre-emption on the northeast, to include his improvement.”
The’ point now for examination is, how far the call to adjoin Steele’s pre-emption on the northeast affects the locátion in the certificate, or in other words changes its position ? This inquiry unavoidably leads to the examination of Steele’s pre-emption. His is a pre-emption appendant to his settlement, calls to “ adjoin the same, and to run up the creek including both sides for quantity.” -
How to fur-iwth fide of Licking, bel-’w * buffalo anf0 ⅛ elude his ⅛-,Provemer't ”
adjohfisg'the»! We and “ ruii “P the o-eek, quaiw tity.”
s “ *¾°⅛ and°indude⅛." {movement.”
Steele’s settlement also calls to lie on the “ north side pf the middle fork of Licking, below a large buffalo jroad and the creek, to include his improvement.”
Here again it is proper to mention, that the evidence in relation to the other improvements in question also applies to, and we think supports Steele’s improvement, The survey of his settlement should have been made .binding on the road and creek, with the improvement in the centre between lines at right angles to that part of the general course of the creek which will be thereby covered, extending from the creek to the road.
Steele’s pre-emption entry calls to adjoin his settlement, and to run up the creek including both sides for .quantity. This we are of opinion should be beginning at the upper corner of the settlement on the cretk, as directed to be laid down ; thence up the creek on both sides so far that parallel lines with the general course thereof, with right angled lines above and below bisected by the creek, will include 5000 acres in a square, except so far as by adjoining the settlement line running from the creek northwardly with the western boundary of the pre-emption on the north side of the creek, when ■laid down as before directed, will produce a departure from this figure.
It only remains now to determine upon the manner of surveying Thompson’s pre-emption entry. This is to adjoin Steele’s pre emption on the northeast, and to include Thompson’s improvement. The northeast-wardly boundary of Steele’s pre-emption approximates nearest to Thompson’s improvement. Hence a line tit right angles therefrom passing through the improvement, with equal quantities of land on each side of said line, binding on Steele’s land as laid down, and the course thereof for its base, so far that parallel rectangular lines therefrom, including the improvement as aforesaid, will contain lOuO acres as nearly in a square as the inclusion of the improvement vvill permit.
For so much land ás will fall within the defendant’s location with the commissioners laid down as herein .directed, and which will also be comprehended by his -entry with the surveyor as just directed to be surveyed, and which is likewise covered by his patent, it is the .opinion of this, court that he holds the better right; and fhat for the residue comprehended by his patent, and *148 which lies with'm the complainant’s survey as made,, and w‘M likewise be included by the same when surveyed ás herein directed, the complainant-has the superior right.
Daciee fuf-eom'lainaiuob1 tains a grant from the com-án^hiTíurvey*' - '
. Wherefore it is decreed and ordered that the decree of the circuit court be re versed and set aside ; that said salt he remanded to that court, with directions to enter a decree conformable to-the foregoing opinion ; but the execution thereof to be stayed until the complainant shall producé'to said court the commonwealth’s grant for said land, &c.