OPINION of the Court, by
Judge LoGAN.
This is a suit for land, in which the appellants, who were the com-uiainants below, claim under the following entries* ^ &■. 7 VIZ ;
' ■« March 28, 1783 — John May, John Bannister,, ^-eiinol!l ■buies, Thomas Shore and Christopher M’Con-ico, apon eight treasury warrants, No. &c. &c. inclusive, enter 160,000 acres between Green river and the Ohio* a^ove adjoining Henderson & Go’s, land : hegjn-hing on the north side of Green river, in the lower line of the entry made by John May, which lies below and adjoining Panther creek, at the mouth thereof; and running thence down Green river to the said Henderson & -Go’s. line ; and thence with their lines to the lines of the entries made adjoining thereto on the Ohio; thence tf’ run eastwardly for quantity, binding on the said en-tries, and on the Ohio between them, where they do not join one another, for the northern boundary ; and on the e,1^r*cs on ?bc north side of Panther creek from the mouth upwards, for the southern boundary, until a line to run north and south from one of the said boundaries ^ ⅛⅛ other* will include the quantity.”
« Also, upon two treasury warrants, No. &c. enter. 40,000 acres, above and adjoining the last entry, to begin in the upper line thereof, where it joins the lines of the entries made on the Ohio f or in case the said upper, line shall rim to the Ohio, then to begin oh such line at the river; and to run thence up, binding on the river, and' oh tb® lines of the old entries made thereon; and running as far eastwardly as to a point due southi of the mouth of the creek, which runs into the OhiiGon the south side a small distance below where the liUls come in near the river shore on; the said south' side, the first time above the mouth of Green rivér; at the mouth of which creek is a tree marked M. W. M. and Jkmes; Matthews’ name at length ; and running thence south, including the quantity between the line of the said lást entry, the said last mentioned south line, and á line.to run from one of them to the other, in an east, and west direction.”1
On the. 14th of April 1783, the first entry wa&amehi-ed as follows, viz ;
*129 “ John May awl others make the following amendment to..their entry of . 160,000 acres made the 23th of March last, to wit: The said entry to be bounded east-wai-djy from the beginning-by the lines of the . said May’s entry ; thence by the lines of William May’s 2000 acre entry this day made, to his upper corner on Panther creek, then by the creek up to the line of John Lee’s 1000 acre surrey, then by the lines thereof running round the same to the lines of Ambrose Madison; thence binding on the same and the back lines of the prior, claims on the said creek above the said Madison’s land, and on the creek where the said claims do not join one another, and then to ran as is directed in the said entry till the quantity is obtained.”
. Of this entry 41,173 acres were withdrawn,, and an inclusive survey for 137,722 acres was executed upon the balance of the entry, and upon the 40,000 acre entry.
The court below sustained the entry of the complainants for 118,822 acres, raid dismissed their bill as to the residue ; from which decree the complainants appealed, and pending the appeal Harrison, one of the defendants, sued out a writ of error, thereby bringing directly in question the validity of the complainants’ entry.
The circuit court sustained the entry of the complainants upon the principle that it was at least good for all the land not legally appropriated between Panther creek, Green river, Henderson and company’s line and the Ohio, and which was not particularly excluded. Without an extension of the entry to those natural and well known objects, it could upon no possible principle be sustained : for the call for entries generally, without specifying what entries, or assigning to them any definite >form, can afford precision to the entry thus calling for them; for as they are uncertain and vague, they cannot communicate to other entries legal precisian, and give notice to others of the “ adjacent residuum.’’
But this entry is not free from other objections, which will.not be improper to investigate. The first of which we shall notice, is the call for the line of Henderson and company.
It will be conceded that the grant to Henderson and company, specified with sufficient precision the form of that land, in running up Green river a given distance, and thence a specified distance therefrom on each side of said river. Now, although this boundary might easily *130 hare been ascertained, or although the line: should hare been notorious at the time the entry of the complainants was made, it must he unavailing in the present instance. The confluence of the Ohio and Green river is not shown, from which the court could ascertain whether the line represented on the plat is the boundary of that grant; and there is no satisfactory evidence in the cause upon this point, or which shews that this is the line of Mfenderson & Co. And it has never been held that the mere representation on the connected plat, of a line or other -artificial object of description, wTas sufficient to sustain an entry depending thereon. . There must be. some proof identifying the object with the place claimed. The representation by the surveyor only on the connected plat of an improvement shown to him at this day, would but illy satisfy the call for. a particular improvement made more than thirty years ago; and a line is as much or more an object of uncertainty, and which requires proof as to identity.
Without fixing', then, that boundary, the entry can assume no certain base. And the only possible mode by which this ob jection could be gotten over, would be by extending the entry to the junction of Green river with the Ohio. But as the junction of those rivers is not shown, and Green river not delineated for a great distance above its mouth, we can form no idea of the quantity of land lying between them below their termination on the plat.
Rut again, it was contended in argument that this entry cannot he sustained consistent with settled precedents, because of its repeated calls for entries generally, without naming or assigning to them any definite positions.
It is true that this entry cannot he supported without disregarding all those vague and indefinite calls, and extending it to the boundaries (beyond which it is evident it did not intend to pass,) Panther creek and the Ohio. Ry extending it thus far, and thereby restricting it in its. range up those streams, giving preference to all pri- or entries by excluding them, from its appropriation, and it must be admitted that as to subsequent locators it would seem to have answered the great object of the land law.
But on the other hand, as subsequent locators were bound to observe and regard the calls of prior entries, *131 and as it is obvious that in this instance the locator did not intend to bind on the water courses, where there were other entries, but to adjoin and run around them ; and as those claims cannot be presumed to have been within the knowledge of others having warrants to locate, but presented embarrassments and insuperable difficulties in the attempt to ascertain them positions, from which quite different conclusions would most likely be drawn by different locators, as to its boundaries, it could scarcely be said that this entry was so special and precise as that others having warrants to locate could with certainty appropriate the “ adjacent residuum.”
It was decided by this court in Hanson, &c. vs. Lashbrook, (vol. 3, 543) that an entry was uncertain and invalid upon these calls, viz. “ running down the meanders of said creek three miles when reduced to a straight line, except obstructed by a prior line,” and thence oft) &c. In that case it was said that if a prior line had intervened between the beginning and the distance designated on the creek, the locator would have been bound by it in making his survey ; andas subsequent locators could not be presumed to have knowledge of the existence of any such line, and no clew was given by which such information could be obtained, it was therefore uncertain with him whether the entry would occupy its distance on the creek, or how much thereof would be thereby appropriated ; and consequently the entry did not afford sufficient notice as to the adjacent residuum.
The reasoning in that case is conceived to apply with equal force to the present case. In that case the locator had given his base, but by annexing the call for apossible existing object, he was held thereby to affect the certainty of his entry, and the claim declared invalid ; because there might be a line which subsequent locators could not be presumed to know, and therefore, could not know what might be the form and boundaries of the land.
So in this case, admitting the base or point of beginning to be fixed with legal certainty, and still he calls for entries and lines by the intervention of which he must for the same reason have been bound in making his survey, and as subsequent locators cannot he presumed to have knowledge of the existence of shell lines and entries from such general and indefinite description, without any clew given by which suchinfonhation *132 could be obtained. Upon the authority, then, of that - caSAs this entry could not he sustained, even if it were relieved from the first objection.
The decree of the circuit court must thcreferebc affirmed in the case of the appeal, and reversed astoHar, rison, the plamtiii m error.