Judge Mides
delivered the opinion.
This is a bill in chancery, brought to sustain the following entry against eider grants, to wit:
*588 “January 13, 1 “83. Jnmes Gordon, assignee of Benjamin Craig, enters 500 acres of land on a treasury warrant, N >. 3021: Beginning at the N E corner of Joseph Blackford’s pre-emption, on G¡enn’s crttk; running on his line southwardly 200 poles, thence out at right angles easl-wardly for quantity,”
There is no pre-emption entry filed or pretended to exist, in the name of Joseph Blackford. But an entry in the name of John Craig and Robert Johnson, assignees of John May, assignee of Joseph Blackford, of a pre-emption warrant. No. 1135, for 1000 acres, is shewn as the one intended. Its calls are, “Joining and including the settlement as near the centre of the tract of land as prior claims will adr mil.”
The settlement entry, to which it is contended, on behalf of the appellants, who were complainants below, tbe foregoing pre emption entry is attached, contains tbe following calls:
“January 24, 1780: Joseph Blackford, bcir at law to Samuel Blackford, enters 400 acres upon a certificate for settlement, lying on tbe North fork of Glenn’s creek, including an improvement of Joseph Blackford’s, and David Glenn’s field, where he raised corn.”
The certificate for settlement contains the same calls precisely, except that in lieu of the expressions “David Glenn’s field where he raised corn,” it has the expression, “David Glenn’s corn field.”
The notoriety of Glenn’s creek and its north fork — and of Joseph Blackford’s improvement, and David G!enn?s corn field on the north fork, (both of which, to wit, the improvement and corn field, are at the same spot) have not been questioned in argument, and it is supported by indubitable evidence. Nor has there been any question made on the mode of surveying this settlement, to wit, the long .established form of laying it in a square, with lines to the cardinal points, iiicluding the centre of the corn field at the intersection of the diagonals of that square. But in adjoining the aforesaid pre emption to this settlement, the first question is made, because it appears that Joseph Black-ford, in addition to this settlement as heir of Samuel, had another settlement, in his own right, of 400 acres, the certificate of which is dated the 26th April, 1780, and an entry thereof made the 24th of Juné in the same year, the tails of both ef which are — “Lying ou the north side of *589 Kentucky, about 2 or -3 miles from Benson’9 crossing, to include a sicking spring and his improvement.” Take the calls of this set!lenient entry alone from its face, and suppose the enquirer to be ignorant of the true situation of the objects on the ground, and he could not have learned from the location itsi If. that it lay upon Glenn’s creek. On examining both the settlement entries oí Blackford, as well as the pre emptions. he would have found, that on the same day with the pre emption entry above recited, alt hoi it omits to name Joseph as the heir of Samuel Biackford, and has no allusion to Glenn’s creek, Craig and Johnson, assignees of May, who was assignee of Joseph Blackford, had likewise entered the ofor pre-emption warrant with the following calls, to wit: “0¡ the waters of Clear creek, about two miles from a large pond, joining Blackford’s settlement, extending up and down waters fur quantity, including the land nearly equal on each side ’’ He would further discover that this entry w'as made on pre-emption warrant No. 106. issued to Blackford in his own right, and that the other left fur the remaining entry issued to Joseph Blackford as heir of Samuel, as appears by the warrant filed in the cause. And hs each pre-emption must, by law, adjoin its proper settlement, no doubt could remain as to. which settlement the warrant No. 1135 was attached by the locator. This objection cannot, therefore, prevail against this entry. Nor is it more strong in nroducing uncertainty, on account of the settlement in Joseph Black-ford’s own right, being near Gienn’s creek, and when it is surveyed, including the main creek near the mouth; for it is evident that the sinking spring musí be about as near the waters of some other stream as it is to Glenn’s creek, as it is proved that when it overflows in high water, it barely then leads to a small drain, which runs into Glenn’s creek. The same comparison of the two pre emption entries and warrants, would still determine the enquiry,
The uncertainty as to which pre-emption entry the complainants’claim most attach itself, must also he obviated clearly, by the entry in Joseph Blackford’s own right being fixed on Clear creek, and the.cspe made as heir being attached to a settlement calling for Gleon’s creek on its face, a call wholly omitted by the other settlement, and even re-, pelled by its pre-emption entry. Nor can we deem the objection made to the appellants’ entry, because it calls for ;>n entry in the name of Joseph Blackford, and the entry *590 itself is in the names of Craig and Johnson, assignees, * va^ 0DC* ^'s probable that such claims, after their assignment, retained the name of the original propria ®tor, and in this case it is proved that it did do so — and that ever after the entry on pre-emption warrant was made ¡{ wag notoriously known by Blackford’s name. Craig and Johnson, it is true, were the record names assigned to this which record shewed that they bad derived it from Blackford, whose name afforded the popular and well known t¡t|e j uge(j g a{J 0{jjec¡ jn another location, and f . , , • «» when so used, it was not necessary that the locator should describe it by every name. If he used that which was we^ understood in the country at the time, it was sufficient. Notoriety of the object is the question, and if common fame assigned a name improper in nature or by record, it was r¡gj,t (0 follow the common mistake, and thereby describe his claim so that it might be found. Many exam-pies might be adduced, where this court has sustained entries calling for names of objects as they existed by reputa-l'on» t*10U8*1 lb®* reputation was, strictly speaking, incor-reef; and in the case of Carson, &c. vs. Hanway, 3 Bibb, 160, this court supported a call for Reed’s pre-emption, in Gilpin’s entry, where Reed’s claim was situated precisely as that of Blackford in the present case. This is a decision strictly in point, and may be considered as decisive of 9ue(t'0Da
An entry appendant on a preemption by^tocrib-ing the emption by the name oí the original certiScate holder, tho’ th^^irTCvor InVifTname of ihe assi’ee, the pre emp-generaUy^ known by the sarne of the íScáítfhold" er.
A ,re-m tion calling" to includethe settlement, vey as an equal quantity on each side as srii admit,” widiout des-crifing what claims are,or how to be •’id'd* 13'at 1 '
The next formidable objection which has been made to this entry, and that which has been more seriously discus-gC(j at the har, is, that arising from the cal! of the pre-emp-entrJ °i Craig and Johnson, assignees of May, who was assignee of Blackford, which directs that the settlement shall be adjoined and included, “<w near the centre of ¡ ¾ ⅛/ lan(i as prior claims will admit."’ Against the entry it has been contended, that, according to a series of modern decisions, the claim cannot be supported, such as Hanson vs. Lasbbrook, 3 Bibb, 543; May, Banister, &c. vs. Mason, 4 Bibb, 128; Clay vs. Reed, ib. 162; Frame vs. Taylor, 2 Bibb, 363.
°ther side it bas been urged, case within the principle of the cases, which have reduced the indefinite expressions “near” about, and such like, to certainty, and have sustained entries by a benign interpretation and rejection of uncertainty; and also that it comes mere properly within the principle of the cases of Drake *591 vs. Ramsey and Logan, Hard. 34; Craig and Mosby vs. Cogar, ib. 383; Wilson vs. Fleming and Johnson, ib. 579; Johnson, &c. vs. Johnson’s heirs, 1 Bibb, 60; Overton vs. Reed and Roberts, 4 Bibb, 154—and not of those relied on by the appellees: and it has been further strenuously, though respectfully contended, that the aforenamed cases, quoted by the appellees, are a departure from the principles recognised by this court, through a series of years, and never doubted; and further, that these cases cannot be supported on principle.
It is admitted that the decisions of this court have been benign and indulgent to entries, and conformed to the unenlightened condition of the country when the locations were made, and the hardy, tho’ frequently illiterate, race of hunters by which ¡ hey were framed. To such extent has this benignity of interpretation been extended, that the future generation, which attempts to trace the errors of the present, will probably see, that the mistakes have been all on this side ; and then the full tide of experience may prove that a more rigid construction would have been better policy and would have sooner placed the country in a state of repose. But however strongly we may admit our fallibility, and hotvever great our leniency may have beenj we cannot admit that unintentional errors ought to lead us to sustain entries which lack the essential requisites of law, altho’ same may have escaped, unhurt, the merits of which, did not entitle them to the sanction of this court. The principles which govern the case of Hanson vs. Lash-brooke and the other correspondent cases relied on by the appellees, are the following : — First: the law required that locations should be made special and precise, so much so, that others could find and appropriate with certainty the adjacent residuum. An entry then, whose positioa depended on unknown existences and subsequent discoveries, or was snbject to be altered by future events, cannot possess these indispensible requisites of law. Secondly : as the duty lay on the shoulders of the first locator to fix the spot with certainty and leave the adjoining territory equally eertain, he ought not to be permitted to suggest the danger of prior claims himself, and shift from himself the burden of search to find them, and impose upon the subsequent locator the finding of them as well as his own position, subject to the still greater uncertainty imposed upon the subsequent locator, when he had found what he *592 deemed prior claims, of not knowing whether the first lo* ca,or would deem them so, or not. An entry then which professes to avoid prior claims, unknown and undefined, is from its terms, a conditional appropriation. It is to be fixed here, if nobody opposes — there, if disturbed in the first attempt — or yonder, if still driven from the positions first attempted Such a choice — such an appropriation is wholly unknown to the statute, and if it could now be indulged, it would be the creature of courts, and the offspring of error, springing from that benign interpretation, which would not only heal entries, but make law, instead of declaring what it is. According to these principles we still approve the case of Hinson vs Lashbrook and the series of cases quoted, bottomed upon it : and vre conceive they are decisive of this controversy. To them may be added the case of Reed vs Dinwiddie, decided at the fal! term, 1820, and not yet reported. That case is so analogous to the present, that it may be considered fully in point. The entry of Blackford, in this instance, reserved to itself a sliding or rather a floating attitude, ready to yield to and recede from every impulse. It was to lie around the settlement, in equal quantities, on each side if permitted ; in very unequal quantities, if resisted by o-ihers — to lie on all sides — on a less number — on one — or, none at all — as subsequent discoveries should dictate. Or if it might, perchance, be enabled to approach the settlement in one narrow aperture, left by prior rights, it Ílien might extend miles for quantity, or bend itself around the settlement as near as the surrounding claims should allow. Such a claim cannot be deemed a valid appropriation of land.
I lx- dutv uf siiew ngV such “ prior volv™”’”n ue pre-emp ■ ion - er and not < a substquem Ibca'.cr.
It has been contended that the existence of those claims, Or of prior claims, is wholly uncertain, — that none of them are shewn by the opposite side, and therefore the P^^dit.V of their existence ought not to affect the claim, 10 construe (he expression, u as near the centre of the land as prior claims will admit” as liberally as possible, the probability of others, and communicate a doubt whether they are there or not. To solve this doubt nd uncertainty is what the locator will not attempt. To avoid its effect, he plajees bis position doubtful, and tells us lie does it for fear of others. Can he be allowed to do this, and impose upon subsequent locators the solution of this doubt, without furnishing him with the means of do- *593 ⅞⅝ so ? Ought he, after such a ¡apse of years, to be permitted to require his adversary to shew that his own doubts and fears were well founded when he made his location, or ought be to alledge that they were not so, because his adversary has not chosen to prove their reality, and thereby gain acertaio position to his claim which he declared at its original to be uncertain, doubtful and conditional ? But the expressions of this entry do not barely suggest a doubt. It suggests the existence of prior claims, and reserves the right to avoid them. Can it be rigid now to hold the locator to the truth of whát bé alledged by bis Solemn act of appropriation f
Tbe call of “near” or “about,” aided by oth’rcalls, will rot viti. ate, those calls indicate a desire in locator to en-'er with sufficient certainty and a doubt whether he bas done so, they do not leave the entry a condtional one, to be changed as futu e events m y require, nor will a mistaken call destroy an entry, if the en ry furnishes the means of detecting the mistake.
We cannot admit that any of the cases, which have reduced the words “near,” or “a6ot«i,” to certain calls, influence this case in principle. Whereever such a construction bas been indulged, it has been prompted by some other call in the entry, and the whole of these instances, are cases where the locator shewed an effort to describe his position with certainty, and the doubt was whether he had done it with sufficient precision. But not one of them furnishes an instance of a conditional location — of a reservation, and choice of a future position, as future events require. The struggle then was for one position, doubtful ly described, and not for many positions, or such an one, as the locator should thereafter determine upon. The words “ near” or “ about” did not claim several attitudes, but only left somewhat doubtful how near, a beginning was to be placed. Nor do we admit the call in Miller’s entry, for Pollock, when Pollock was not located, until the moment afterwards, as disregarded in the case of Blain vs. Thomson, 3 Bibb 142, to be similar in principle to the call now in question. It was shewn there that a mistake was made by the locator ; Pollock had the reputation of having land by virtue of a neighboring improve ment. Miller meant to adjoin and not interfere with it. Pollock had not fixed his position as Miller supposed, and in that case it was demonstrated that Miller called for what did.not exist, and the call was adjudged not to affect him. When Miller made this mistake, he shewed, by name, what claim he meant to avoid, and furnished the locator with the means of ascertaining, by recurring to the record, that it was a mistake, and that Pollock had no such claim till afterwards. But bad Miller suggested the adjoining of Some unknown claim, the name of which he kept conceál- *594 ed, and had left his own claim to be shifted where the discovery might be afterwards made, the case might then be faintly assimilated to the present, which calls to avoid, and recede from sundry unknown claims, as after discoveries might render it necessary. The case of Wilson vs Fleming and Johnson, has been relied on. That case was decided on the ground that the entry of Brooks and Gillespie had fixed certain bounds which could not be transcended, and those bounds did not quite include the quantity. Of course the expressions, “ if there be so much vacant land fit lor cultivation,” could not he construed to mean, a right to change position and choose, because no choice could be had, but were decided to mean the suggestion only of a doubt whether the quantity was there.
Attentry giving a base & side lines, will be saved to the extent ol the war-rani, ah ho* theentry may contain sun dry exception otother claims.
Talbot for appellants, Crittenden contra.
The case of Mosby’s entry, as sustained by this court, Craig vs. Mosby & Cogar, is strongly relied on in support of this e.i• ry. l'hat entry was sustained on the sole ground that the base and side lines, in a rectangular figure, were fixed and immovable and not subject to change : .and that the quantity contained in the warrant, as well as the law, forbade him to go further, and that the calls and exceptions made, did not warrant a further extension. The ptrmanencv of the claim, so far as it was sustained, alone saved it. At the same lime it is admitted that the decision on that entry is one furnishing as strong an example of the application of the benign interpretation as any other. However sound, or however doubtful, the principle on which it is founded may be, tbe principle can only embrace, and was only intended to embrace entries which were certain, to an extent not exceeding their quantity, and to support them to that extent only, and ought never to aid a case, where the whole quantity is doubtful or conditional.
The decree below must be affirmed with costs.