Opinion of the Court, by
Judge Owsley.
THIS is a contest between adverse conflicting pre-emption claims. The appellee, who was complainant in the court below, claims under that in his own name, and the appellants claim under that which was obtained in the name of John Howard.
The certificate and entry with the surveyor in the name of Howard, are elder in date than those in the name of Jouitt; but the court below sustained the entry of Jouitt, and held that of Howard invalid, and decreed the heirs of holder to surrender to Jouitt the elder legal title derived by them from Howard.
Whether either of the claims possesses pre-emptive dignity, forms no figure in this contest; for there is evidently no pretext for pre-emptive dignity in the pre-emption of Jouitt, and as the entry of Howard with the surveyor is the eldest, though it be entitled to no pre-emptive merit, yet if it contains the requisite certainty and precision, the heirs of Holder must prevail. The contest must, therefore, turn, in this court, as it was made to turn in the court below, on the validity of the entries made with the surveyor. The entry of Jouitt is in the following words, &c.
“October 30th, 1786—John Jouitt, heir at law to Matthew Jouitt, deceased, enters one thousand acres of land in Fayette county, by virtue of a pre-emption treasury warrant, to begin at a small sugar tree, I. D. and I. I. 1786, on the cliff of lower Howard’s creek, on the path side which was marked by Harry Innis, and to run from thence to the mouth of said creek; thence down the Kentucky, as it meanders at low water mark, and from the beginning up said Howard’s creek as it meanders, until a straight line from said Howard’s creek to Jouitt’s creek, shall include the quantity.”
The Kentucky river, Howard’s creek and Jouitt’s creek are all proved to have been notorious, at and before the date of Jouitt’s entry; and they are all, together with the cliff of Howard’s creek, and a trace or path passing over the cliff, delineated on the connected *382 plat in the cause, so as to form a suitable space to construct a survey of one thousand acres, in convenient form, on the river and between the creeks. A subsequent locator could, therefore, have had no difficulty in finding the body of the land intended to be appropriated by Jouitt’s entry. He might not only have found the body of the land, but, by adverting to the entry, he would distinctly perceive that it must adjoin the mouth of Howard’s creek, and by pursuing the description contained in the entry, would encounter little difficulty in arriving at the beginning. He would not, from any direct expression of the entry, discover on which side of the creek the beginning might be found; but, from the call to run up Howard’s creek from the beginning, so far that a straight line from Howard’s creek to Jouitt's creek, would include the quantity, he would perceive that the land must lie between the creeks, and extend up Howard’s creek beyond the beginning; and as, from the relative bearings of the river and creeks, one thousand acres cannot be made to adjoin the river and extend up the creeks a distance equal to the base of a square of one thousand acres, he would necessarily conclude that the beginning might be found somewhere on the western cliff of Howard’s creek, within less than four hundred poles from its mouth, and on the side of a path.
With these impressions, a subsequent locator would naturally proceed to the mouth of Howard’s creek, for the purpose of commencing his search for the beginning; and when at the mouth of the creek, he would perceive two paths coming together on the west side of the creek, and thence in common passing the creek; but as one of those paths would be discovered to ascend the river cliff, the subsequent locator would have no hesitation in selecting the other, as better calculated to conduct him to the beginning. By pursuing that other, he would immediately ascend the cliff of the creek, and on the top of the cliff, on the side of the path, he would discover the sugar tree, I. D. and I. I. 1786. But, whilst ascending the cliff, and before he arrived at the marked tree, he might perceive a path taking out to the right, and again uniting with the path on which the tree stood, about one hundred yards from the place of their departure, and about forty or fifty yards further than the marked tree, from the mouth of the creek. *383 The subsequent locator might, therefore, in ascending the cliff, be induced to take the right hand path; but, even were he to do so, and should he be compelled to explore both paths, from their departure to the place of their uniting, before the marked tree could be found, his labor would be comparatively small, to that which many others have had to encounter, from entries which have been sustained by this court.
The marked tree, it is true, has, since the making of the entry, disappeared, and but one witness, whose character has been assailed, has pointed out, with actual precision, the place where it stood. Notwithstanding, however, the attack on the credit of that witness, we apprehend the place selected by him must be admitted to be that on which the marked tree stood. Other witnesses prove, incontestably, the existence of the tree since the date of the entry; and, whilst they are unwilling to fix on the spot where it stood, they detail circumstances which not only show that the tree must have stood within about forty yards of the place selected by the witness, but conduce strongly to show, that, in pointing out the place, that witness has not been mistaken.
It results, that the entry of Jouitt must be sustained; and it should have been surveyed by extending a direct line from the beginning to the mouth of Howard’s creek, and thence with the meanders of the river to the mouth of Jouitt’s creek, and up Jouitt’s creek with its meanders, and up Howard’s creek with its meanders, so far that a line parallel with the general course of the river, from Howard’s creek to Jouitt’s creek, will include the quantity. For so much of the land in contest as will be included in the entry of Jouitt, when thus surveyed, and which is also included in his survey as made, Jouitt must be entitled to a decree, unless the entry of Howard, under which the heirs of Holder claim, can be sustained. Howard’s entry is as follows:
“January 14th, 1783-John Howard enters one thousand acres of land, on a pre-emption warrant, &c. on the Kentucky river, beginning on the said river, at the upper side of the mouth of Howard’s lower creek, and running, agreeable to the commissioners’ certificate, down the river about one and one half mile; thence out from the river, including the lower part of *384 the next creek below, called Duke’s creek, and extending along, near that creek, as is necessary to make the complement, when the back line is run across to the upper side of Howard’s creek, so far as thence to include the said creek to its mouth, or to a line that shall be agreed upon between said Howard and William Bush, who has an adjoining pre-emption.”
Were the latter expressions, “ or to a line that shall be agreed upon between said Howard and William Bush, who has an adjoining pre-emption,” excluded from this entry, there could be no reasonable doubt of its validity. It would then, though not expressed with the utmost clearness, evince an intention in its maker, not easily misunderstood by subsequent adventurers, to appropriate one thousand acres of land adjoining the Kentucky river, and extending up, and barely including Howard’s and Duke’s or Jouitt’s creek, so far that a line parallel with the general course of the river between the creeks, would include the quantity.
By calling to lie on the river, fixing the beginning at the mouth of Howard’s creek, and thence extending down the river, together with the call to extend from the termination of the line down the river, out from the river for the compliment, shows, incontestably, that the maker of the entry intended to confine it to the river; and although, in extending down the river, he calls to run about one and a half mile, and that distance terminates somewhat below the mouth of Duke’s or Jouitt’s creek; yet as, in giving the entry a direction out from the river, he calls to include the lower side of that creek, and to extend along near thereto, it is obvious that he intended his entry to extend from the beginning down the river, so far only as barely to include the lower side of Jouitt’s creek. And, we apprehend, it is equally clear, that the maker of the entry intended to extend his entry up, and including each of those creeks, that of Howard’s and Jouitt’s, so far as that a line parallel to the general course of the river, will include the quantity. He has indicated his intention to extend up Jouitt’s creek, by calling to extend near to, and including the lower part of it; and he has, by terminating the line back from the river, on the upper side of Howard’s creek, and calling to include it to its mouth, shown a design barely to include that creek by a line with the *385 creek from the termination of the back line, from the river to the beginning.
The circumstance of there being connected with the call to run down the river, the expressions, “ agreeable to the commissioners’ certificate,” cannot, we apprehend, militate against the construction which we have given to the entry. Those expressions cannot have been intended by the locator, to give shape or figure to his entry. He had previously employed language sufficiently expressive of his intention to adjoin the river, and by those expressions to which we have referred, could have designed nothing more than to point out that accordance which he supposed to exist between the general direction which he had given to his entry, down the river, and that which had been given by the commissioners’ certificate. And in that, it will be perceived, by adverting to the certificate, the locator was not mistaken; for the river, from the mouth of Howard’s to Jouitt’s creek, bears a westward direction, and the certificate calls to lie on the north side of the Kentucky river, including Howard’s improvement at the mouth of Howard’s creek, and to extend up the creek and westward for quantity.
It is true, Howard’s improvement is not delineated on the plat; but it is proved to be within a few yards of the creek, and not more than 40 poles from its mouth; so that a westward direction from the improvement would be down the river, in strict accordance to the call in the entry, down the river from the beginning.
The preceding remarks have been predicated on the supposition that the Kentucky river and Howard’s creek were notorious at the date of Howard’s entry in 1783; and we have made that supposition, because the Kentucky must, without the aid of evidence, be presumed to have been then notorious, and because we infer from the evidence that Howard’s creek was so.
In speaking of the notoriety of Howard’s creek, it is true, no witness has said, in express terms, that it was notorious at the date of his entry. The attention of the witnesses seems to have been directed particularly to the date of Jouitt’s entry in 1786; and whilst responding to interrogatories put as to the notoriety of Howard’s creek at that date, they seem to have had no hesitation in declaring, that it was not only notorious then, but was so before. Other witnesses, again, speak of *386 their knowledge of the creek prior to the date of Howard’s entry, and prove, incontestably, that the improvement of Howard, on the creek, was notorious before that period. The circumstance of Howard’s improvement being on the creek, and notoriously known, is, in itself, strong evidence of the notoriety of the creek; and, when connected with the knowledge which the witnesses are proved to have had of the creek, and the fact of its being proved notorious before 1786, leaves no doubt of its notoriety at the date of Howard’s entry.
3 Bibb 543.
If, then, we are correct in supposing the entry of Howard, without the expressions, “ or to a line that shall be agreed upon between said Howard and William Bush, who has an adjoining pre-emption,” contains a precise and certain location, those expressions cannot be admitted to produce any prejudicial effect.
Those expressions contain internal evidence of the non-existence of the line to be agreed on between Howard and Bush, and could not conduce to deceive or mislead a subsequent locator, as to the land embraced by the entry. Without those expressions, the location was certain and precise; and with them, its position was not rendered less so. By those expressions, no burthen was cast upon subsequent locators, in searching for the land contained in the entry; but, from them, they would readily perceive that the line alluded to had no existence, and was to depend upon some future agreement. The subsequent locator would, in fact, perceive that those expressions amounted to nothing more than an intimation of a possible intention in the locator to change or alter the entry which he had made.
The entry connected with those expressions, does not, we apprehend, come within the principle recognized by this court in the case of Hanson and Lashbrook, and followed by repeated decisions since.
There, the figure of the land intended to be appropriated, was made to depend upon possible objects, which might or might not exist at the time of making the entry; and the entry having failed to exhibit sufficient information for others to ascertain those objects, the burthen imposed on subsequent locators was thought, and, no doubt, thought correctly, to be too great to justify the court in sustaining the entry. But here, the figure of the land is not made to depend on *387 objects which may or may not have existed at the date of the entry; but the subsequent locator would perceive, from the calls of the entry, that the line to be agreed on between Howard, and Bush, had no existence, and could not affect the position of the entry.
The present case bears a more striking analogy to the case of Blain vs. Thompson, 3 Bibb 144. In that case, the entry of Miller called to lie on the north side of the middle fork of Licking creek, to include his improvement, and joining the land of Alexander Pollock. At the date of Miller’s entry, Pollock had an improvement, but had obtained no certificate; and the question occurred, as to the effect of the call of Miller to adjoin the land of Pollock. It was held, that as Pollock had obtained no certificate, the call to adjoin his land was not deceptive, and ought to be disregarded. In that case, the court observes, that an unnecessary call in an entry, not calculated to deceive or mislead a subsequent locator, may, with propriety, be disregarded, as a call for an object evidently not existing, or which, on the proper inquiry, would unavoidably be found without effect and not deceptive.
The principle there recognized, applies emphatically to the entry of Howard, and proves conclusively, that the expressions at the close of his entry, to which we have referred, must be harmless and inoperative.
The entry of Howard must, consequently, be sustained, and ought to be surveyed binding on the Kentucky river, with its meanders, from the upper side of Howard’s creek to the lower side of Jouitt’s creek, and with lines up, and binding on, and including each of those creeks, so far that a line parallel with the general course of the river, will include 1,000 acres. To so much of the land in contest as may be common to a survey when so made, and the survey of Howard as made, the appellants have shown the superior right, and should not have been decreed to convey to the appellee; but to that part of the land in contest which is included within the survey of Howard as made, and which may not be included in his entry when correctly surveyed, and which will be common to the survey of Jouitt as made, and to a survey when made on his entry as we have directed it to be made, Jouitt has shown the superior right, and the appellants, must be decreed to surrender their title thereto.
*388 The decree must be reversed with costs, the cause remanded to the court below, and such orders and decrees there made, as may not be inconsistent with the principles of this opinion.